**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ANTHONY B. SCHNEIDER,     ) | |
| ) | CASE NO. 1:08-cv-01256 |
| Plaintiff,     ) | |
| ) | |
| v.     ) | JUDGE DONALD C. NUGENT |
| ) | |
| MICHAEL J. ASTRUE,     ) | MAGISTRATE JUDGE GREG WHITE |
| Commissioner of Social Security     ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant.     ) | |

Plaintiff Anthony B. Schneider ("Schneider") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Schneider's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

For the reasons set forth below, the Magistrate Judge recommends that the final decision of the Commissioner be VACATED and REMANDED for further proceedings consistent with this Report and Recommendation.

**I. Procedural History**

On December 6, 2002 and March 4, 2003, Schneider filed an application for POD, DIB,

and SSI alleging a disability onset date of September 19, 2002 and claiming that he was disabled due to a combination of mental and physical impairments. His application was denied both initially and upon reconsideration. Schneider timely requested an administrative hearing.

On April 23, 2007, Administrative Law Judge Patricia D. Yonushonis ("ALJ") held a hearing during which Schneider, represented by counsel, testified. Jonathan Nusbaum, M.D., testified as the Medical Expert ("ME") and Jerry Olsheski, Ph.D., testified as the Vocational Expert ("VE"). On June 28, 2007, the ALJ found Schneider was able to perform a significant number of jobs in the national economy when not abusing alcohol and/or drugs and, therefore, was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

On appeal, Schneider claims the ALJ erred by: (1) finding that substance abuse was a contributing factor material to Schneider's disability; and (2) failing to adequately consider the opinion offered by psychologist William Schonberg, Ph.D. (Doc. No. 14.)

## II. Evidence

*Personal and Vocational Evidence*

Born on September 23, 1962 and age forty-four (44) at the time of his administrative hearing, Schneider is a "younger" person. *See* 20 C.F.R. § 404.1563(c) and 416.963 (c). Schneider has high school equivalent education and past relevant employment as a bakery worker.

---

[1] The ALJ found that Schneider's anxiety disorder met the criteria of Listing 12.06 when Schneider's substance abuse is included. (Tr. 23.)

*Medical Evidence*[2]

Schneider has a long and conflicting medical history. On May 23, 2001, he visited the Emergency Room ("ER") complaining of anxiousness and depression. (Tr. 193.) He further indicated that he had been feeling "very paranoid" during the previous few weeks. *Id*. Schneider was diagnosed with Somatization disorder. (Tr. 194.)

On October 19, 2002, Schneider was seen by Ho-Young Chung, D.O., whose treatment notes document an increase in tension, anxiety, and paranoia. (Tr. 293.) Dr. Chung recommended Schneider seek psychiatric care. *Id*.

On December 8, 2002, Schneider was admitted to Mansfield Hospital for complaints of suicidal ideation. (Tr. 265.) At discharge, he was diagnosed with major depression with psychotic features. (Tr. 264.) Schneider suffered from paranoid delusions and was treated with Zyprexa. *Id*. His medical history included a reference to polysubstance abuse, though Schneider told the doctor he did not currently use alcohol or illicit street drugs. (Tr. 264-67.) The attending physician assigned him a Global Assessment of Functioning (GAF) score of 30.[3]

On December 26, 2002, Schneider tested positive for marijuana. (Tr. 285-86).

On January 12, 2003, Schneider presented at the ER for treatment of a panic attack and reported increased anxiety. (Tr. 308.) Schneider denied any alcohol or drug use at that time. (Tr. 308.) Dr. Qureshi prescribed medication for sleep difficulties and for anxiety.

---

[2] Because Schneider's assignments of error deal solely with his mental impairments, his various physical impairments are intentionally omitted from discussion. (Doc. No. 14 at 4.)

[3] A GAF score between 21 and 30 indicates behavior considerably influenced by delusions or hallucinations, serious impairment in communications or judgment, or the inability to function in all areas. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

(Tr. 309-10.)

On January 23, 2003, Dr. Davis completed a Hamilton Anxiety Rating Scale evaluation, which indicated that Schneider suffered from "very severe, incapacitating" anxiousness and tension.[4] (Tr. 516.)  Schneider telephoned Dr. Davis several weeks later and indicated that his medications were not helping.  (Tr. 514.)

On April 24, 2003, Chandu Patel, M.D., diagnosed Schneider's condition as panic attacks without agoraphobia and polysubstance abuse, unspecified.  (Tr. 383-84.)  Schneider reported that he had a past history of substance abuse, but denied using alcohol for the past year.  (Tr. 383.)  He also noted that, a year earlier, he had received a driving under the influence citation and lost his driving privileges.  (Tr. 383.)  Dr. Patel ascribed Schneider a GAF score of 65, indicating some mild symptoms or some difficulty in social, occupational, or school functioning. (Tr. 384.)

On May 5, 2003, Schneider again saw Dr. Patel, who described Schneider as euthymic but irritable.  (Tr. 377.)  Schneider was prescribed Celexa after he stopped taking Lexapro due to side effects.  *Id*.

On June 3, 2003, William Schonberg, Ph.D., performed a consultative examination of Schneider's mental condition.  (Tr. 331-36.)  Schneider indicated that he had stopped taking various medications because they did not agree with him.  (Tr. 333.)  He also admitted that he had stopped going to therapy.  *Id*.  During the examination, Schneider had a depressed mood and restricted affect, but related in a calm and sensible manner, and showed no signs of psychomotor

---

[4] It is unclear whether the ratings as to the severity of Schneider's symptoms contained in the evaluation consist of Dr. Davis's findings or merely represent Schneider's responses.

4

retardation or agitation. *Id*. He told Dr. Schonberg that he thought the government was shooting rays at him and trying to poison him. (Tr. 333, 335.) Dr. Schonberg diagnosed Schneider with a schizophrenic disorder, paranoid type, and assigned a GAF of 50, indicating serious symptoms or a serious impairment in social, occupational, or school functioning. (Tr. 335.) Dr. Schonberg found that Schneider's "mental ability to withstand the stress and pressures associated with day to day work activity would be at least moderately to severely impaired because of his ... diagnosis." (Tr. 336.) Further, Dr. Schonberg opined that Schneider could have difficulty performing even simple, repetitive work tasks. *Id*. According to Dr. Schonberg, Schneider claimed that he did not use alcohol or drugs at the time of the evaluation, but had used them on a daily basis for several years until about five years ago. *Id*.

During July of 2003, Schneider reported to the ER on two occasions for anxiety. (Tr. 341-47.) He denied alcohol and illicit drug use. (Tr. 342, 346.)

On July 17, 2003, Schneider was seen by Dr. Patel. (Tr. 376.) Schneider reported he had been to the ER and that Ativan had been effective in eliminating his panic attack. *Id*. Dr. Patel increased Schneider's dosage of Celexa and declined to prescribe Ativan or Xanax due to an addiction potential. *Id*.

On August 25, 2003, Schneider was seen at the ER. (Tr. 364.) He was not taking any medications, because he believed the government was conspiring to poison him. *Id*. Schneider indicated that he had no history of alcohol or drug use. *Id*. On examination, Mark Seher, D.O., found that Schneider was "slightly paranoid but he is not delusional at this point." *Id*. He was discharged with diagnoses of paranoia, non-compliance, depression, and anxiety. *Id*.

On September 9, 2003, Dr. Patel saw Schneider and noted that he had been seen in the

5

Crisis Stabilization Unit that morning, had missed his most recent appointment, and had been without medication for approximately one week. *Id.* Dr. Patel found that Schneider's mental status examination was "remarkable for good hygiene, good appearance, orientation to time, place, person, euthymia, flat affect, no significant change in sleep, appetite, or weight, abstract reasoning ability, absence of hallucinations or suicidal or homicidal ideations or plans or delusions." *Id.* Schneider was counseled at length about "his symptoms, his subjective complaint of paranoia, and absence of any signs or symptoms suggestive of any psychiatric diagnosis on Axis I except for his history of substance abuse. (Tr. 375.) Schneider insisted that he was mentally ill and required medication to relieve his anxiety. *Id.*

On September 12, 2003, Dr. Patel completed a physician's certification form stating that Schneider had diagnoses of panic attacks without agoraphobia and polysubstance abuse. (Tr. 386.) Dr. Patel opined that Schneider had no significant mental limitations and was employable. (Tr. 387.)

On October 3, 2003, Deryck Richardson, Ph.D., a state agency psychologist, reviewed Schneider's medical records and offered the following assessment: Schneider had anxiety related disorders; these disorders resulted in a mild restriction of daily activities, moderate restriction of social functioning, moderate restriction of concentration, persistence and pace, and no episodes of deterioration; the medical evidence was equivocal in supporting Schneider's psychiatric allegations; he retained the capacity to understand, remember, and carry out simple instructions for routine, repetitive tasks; his concentration and attention were adequate as long as expected pace was not rapid; and his impairments limited contact with others to superficial levels. (Tr. 419-26.)

6

On January 19, 2004, Robelyn S. Marlow, Ph.D., a state agency psychologist, reviewed Schneider's updated medical records and affirmed the findings of Dr. Richardson. (Tr. 418.)

On March 11, 2004, Schneider was seen at the ER and complained that he was "feeling funny." (Tr. 437.) Upon discharge, he was advised to consider resuming his depression medication, which he had discontinued a month ago because he believed it was not helping. (Tr. 437-39.)

On April 6, 2005, Yogesh Desai, M.D., Schneider's psychiatrist, completed a Mental Functional Capacity Assessment form. (Tr. 583-85.) Dr. Desai diagnosed depression and psychosis, but indicated that Schneider was employable given his history and examination findings. (Tr. 584-85.) Dr. Desai indicated that Schneider had moderate limitations in his ability to maintain attention and concentrate for extended periods, to complete a normal work day and work week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 583.) Dr. Desai further indicated that Schneider was moderately limited in the following areas: interacting with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers and peers without distracting them or exhibiting behavioral extremes; and setting realistic goals or making plans independently of others. (Tr. 583.) Also, Dr. Desai opined that Schneider would be markedly limited in his ability to work in coordination with or proximity to others without being distracted by them. (Tr. 583.)

On May 17, 2005, Robert Denton, M.D., diagnosed Schneider's conditions as sleep apnea, generalized anxiety disorder, and paranoia, (Tr. 591, 593.) Dr. Denton found that Schneider's

7

conditions were stable with treatment, and his abilities to lift, carry, sit, stand, and walk were not affected by his impairments. (Tr. 592.)

On August 31, 2005, Dr. Denton reported that Schneider was doing "very, very well." (Tr. 614.) According to Dr. Denton, Schneider had lost a lot of weight, and was feeling much better than before, with no snoring or breathing problems. *Id*.

On December 13, 2005, Schneider was admitted to the ER with complaints of depression, paranoia, and suicidal ideation. (Tr. 682.) Schneider reported smoking marijuana and drinking alcohol within the past week. (Tr. 682-84.) Schneider tested positive for marijuana, but he refused to take an alcohol level test. *Id*. A mental status examination showed he was alert and oriented, had unkempt hygiene, a depressed mood, and fleeting suicidal ideation without any definitive plans. (Tr. 685.) He denied current paranoia, hallucinations, or homicidal ideation. *Id*. His attention span was fair, but his memory was poor. *Id*. Schneider was diagnosed with major depression, recurrent, moderate; alcohol abuse; and marijuana abuse. *Id*. His GAF at the time of admission was assessed as 25. *Id*.

On March 22, 2006, Schneider told Dr. Denton that he was doing "okay" and that Klonopin was still helping him sleep. (Tr. 613.) Dr. Denton concurred that Schneider was far less anxious and was sleeping a little better. *Id*.

On April 4, 2006, Schneider was seen by Dr. Desai, who last treated him almost a year earlier. (Tr. 618.) According to Dr. Desai's treatment notes, "[Schneider] is increasingly preoccupied with the fear that people wanted to hurt him and wanted to poison him." (Tr. 618.) Schneider indicated that he believed "the government wanted to cut down the population and since he did not contribute to society in last five years he had been the target of being killed by the

8

government." *Id*.  Schneider was poorly groomed at the time of the appointment.  *Id*.  Dr. Desai observed that Schneider's behavior was extremely suspicious and guarded during the evaluation, while his psychomotor activities appeared agitated.  *Id*.

On August 14, 2006, a licensed social worker performed an adult diagnostic assessment of Schneider.  (Tr. 622-32, 711.)  Schneider continued to present with signs and symptoms of a major depressive disorder with paranoid ideation, regarding being the target of a "government experiment."  (Tr. 622.)

On September 19, 2006, Dr. Denton noted that Schneider was doing well, had no major problems, and was stable.  (Tr. 613.)

*Hearing Testimony*

At the hearing, Schneider testified to the following.  He rarely drinks anymore.  (Tr. 693.)  He smoked marijuana only twice in the last three months and only a couple times a month around the time of his alleged onset date.  (Tr. 693-94.)  He believed that he was disabled due to back pain, depression, anxiety, paranoia, and sleeping problems.  (Tr. 697-702.)  Aside from microwave dinners, he rarely cooked his own meals, did not do laundry, did not exercise, did not attend social gatherings, and mostly watched television.  (Tr. 702-05.)  He lived with his mother who did the household chores.  (Tr. 702-06.)

Schneider testified that he could follow simple rules when not using drugs and alcohol, but that he would probably only have a "poor" ability to do so if using.  (Tr. 712.)  The ALJ defined drug or alcohol use as "if he's under the influence."  *Id*.  Schneider testified that he had never been to work while under the influence of drugs or alcohol.  (Tr. 712-13.)  He testified that, when not under the influence of drugs or alcohol, he can "get along with people okay" but does not like

9

being around people and tends to avoid them. (Tr. 713.) Schneider testified that he did not handle routine stress well regardless of whether he was under the influence of alcohol or drugs. (Tr. 716.) He did not feel he functioned well independently regardless of his use of substances. *Id.* He testified that he had a "medium" impairment in his ability to maintain attention and concentration, but such ability would lessen under the influence of alcohol and drugs. (Tr. 717.) He also asserted that his ability to understand and carry out simple job functions was poor all the time. *Id.*

The ME testified that Schneider's *physical* limitations did not meet or equal any of the listed impairments. (Tr. 726.) The ME's opinion, however, did not factor in any mental impairments, as he was unqualified to speak about such issues. (Tr. 731.)

The ALJ asked the VE to consider a hypothetical individual with the following limitations: the ability to perform light exertional work; no limitation in the ability to understand, remember and carry out very simple and short instructions; no limitation in his ability to respond appropriately to criticism, maintain socially appropriate behavior, adhere to basic standards of cleanliness, and set realistic goals independently of others; and only non-significant limitations in the areas of sustained concentration and persistence. (Tr. 733; 387.) The VE opined that Schneider cannot perform his past relevant work due to his physical limitations. (Tr. 733.) The VE further opined that such a person could perform a significant number of jobs in the national economy, including assemble, hand packer, and cleaner. (Tr. 733-35.) However, the VE also testified that if Schneider's mental limitations, as expressed in his hearing testimony, were credible, he would be unemployable. (Tr. 735-36.) The VE stated that if Schneider were restricted in the manner described by Dr. Schonberg in Exhibit 30F, he would also be

10

unemployable. (Tr. 736.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[5]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Schneider was insured on his alleged disability onset date and remained insured through September 30, 2007. (Tr. 17.) Therefore, in order to be entitled to POD and DIB, Schneider must establish a continuous twelve month period of disability commencing between September 19, 2002 and the date of the decision. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*,

---

[5] The entire five-step process entails the following: First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits under the Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Schneider established a medically determinable, severe impairment, due to a combination of the following: degenerative disc disease with facet hypertrophy, obesity, chronic obstructive pulmonary disease, obstructive sleep apnea, anxiety, panic attacks, and polysubstance abuse. (Tr. 19.) The ALJ further found that Schneider satisfied Listing 12.06 when his alcohol and drug abuse were considered. However, without the limiting effects of alcohol or drug abuse, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Schneider is unable to perform his past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Schneider is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence

12

could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### VI. Analysis

Schneider claims the ALJ erred by: (1) finding that substance abuse was a contributing factor material to Schneider's disability; and (2) failing to adequately consider the opinion offered by Dr. Schonberg.

*Substance Abuse*

Schneider argues that substantial evidence did not support the ALJ's finding that drug and/or alcohol abuse was a contributing factor material to his disability. (Pl.'s Br. at 13-16.) Schneider further asserts that the ALJ failed to articulate her reasoning for finding that his substance abuse was a contributing factor or connect evidence from the record to her finding. *Id*.

The ALJ found that Schneider was disabled under Listing 12.06 when considering his substance abuse in combination with his mental impairments. (Tr. 23.) Pursuant to federal law, "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Therefore, the ALJ was required to determine whether Schneider would be disabled without his substance abuse issues. The Social Security Administration employs the following procedures to determine whether a claimant's drug addiction or alcoholism is a contributing factor under the

above statute.

> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, *we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol* and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535 (emphasis added).

The ALJ's opinion contains a fairly exhaustive catalogue of the medical evidence contained in the record. (Tr. 19-23.) After first determining that Schneider was disabled with the combined limitations caused by substance abuse, the ALJ subsequently determined that "[w]hen not abusing drugs or alcohol, the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments ...." (Tr. 23.) She found that, without alcohol and drugs, Schneider had only mild limitations under 12.06(B) and no episodes of decompensation. *Id*.

Despite the abundance of medical information containing a wide spectrum of opinions

14

concerning Schneider's limitations, the ALJ failed to meaningfully connect any of those opinions with her findings that Schneider was disabled with substance abuse, but that his mental limitations were not of disabling severity when substance abuse was subtracted. Though the ALJ made several oblique references to the claimant's credibility or inconsistency (Tr. 26-27), she fails to explain how his lack of candor was relevant in determining whether Schneider's mental limitations, upon which she based her initial determination that he was disabled, would remain if he stopped using drugs or alcohol. Thus, the ALJ's opinion lacks the necessary evaluation or explanation of the impact substance abuse had on Schneider's mental limitations as required in 20 C.F.R. § 404.135(b)(2).

The shortcomings of the ALJ's analysis on this issue are further highlighted by the Defendant's brief, which, while raising arguments supporting the ALJ's opinion, fails to rely on the actual "analysis" provided by the ALJ.[6] *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Oct. 31, Ohio 2007) ("The inadequacy of the ALJ's analysis is made even more apparent by Defendant's argument in his brief. Rather than citing the ALJ's explanation for

---

[6] The ALJ remarks that Schneider lied about his alcohol and drug abuse history on two occasions and that "[m]aybe, this is why the claimant's doctors have diagnosed schizoaffective disorder." (Tr. 26.) The first record is from an ER admission where Schneider was treated by Dr. Seher. (Tr. 364, Exh. 37F at 2.) However, as Dr. Seher never offered an opinion concerning the effects of Schneider's mental limitations, it is unclear what relevance this information has to an evaluation of Schneider's non-substance abuse related mental limitations. The second record cited by the ALJ specifically contains language indicating that Schneider "reported a past history of marijuana abuse and episodic alcohol abuse." (Tr. 383, Exh 38F at 9.) Furthermore, it is unclear what the relevance of this information is since the author of the record, Dr. Patel, gave Schneider perhaps the least restrictive assessment of his mental impairments and diagnosed him with polysubstance abuse. Although Defendant attempts to convert the ALJ's unexplained statement into a fully developed argument in his Brief (Def.'s br. at 11-13), his *post hoc* rationale, as discussed below, is not controlling in this Court's review.

15

the weight given to various medical opinions, Defendant creates arguments to support the ALJ's opinion that were not actually contained in the ALJ's decision.")  As this Court has previously noted, "arguments [manufactured by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration."  *Id.*, *citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n.1, (2001); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's post hoc rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).  With respect to this particular issue, the ALJ's opinion essentially consists of a catalogue of medical records and a set of conclusions.  Because this Court can only speculate as to the reasoning behind the ALJ's opinion, it is prevented from conducting a meaningful review.  The Court does not find that the ALJ's conclusions are untenable, but only that the reasoning behind the ALJ's decision has not been adequately explained.

For the foregoing reasons, the Magistrate Judge recommends this case be remanded so that ALJ may: (1) issue a new decision containing an analysis that sufficiently explains the basis of her conclusions with enough clarity to allow this Court to meaningfully review the decision; and, (2) if necessary, conduct a new hearing.[7]

---

[7] Though not material to this Report and Recommendation, the Court notes that there was no ME at the hearing qualified to offer testimony concerning Schneider's mental impairments or how alcohol and drugs may have contributed thereto.

*Dr. Schonberg's Opinion*

Schneider also argues that the ALJ failed to follow proper legal procedures by ignoring the opinion of Dr. Schonberg, a consultative examiner. (Pl.'s Br. at 16-18.) Pursuant to 20 C.F.R. § 404.1527(d), the Social Security Administration "will evaluate every medical opinion [it] receive[s]." Notably, when asked a hypothetical based on the limitations outlined by Dr. Schonberg, the VE testified that a person with such limitations would be unemployable. (Tr. 736.) Although the ALJ's decision mentions Dr. Schonberg's opinion in its catalogue of the medical evidence, the ALJ does not discuss what weight, if any, she ascribed to the opinion. (Tr. 20.) The Commissioner does not assert that the ALJ properly considered Dr. Schonberg's opinion, but rather offers a *post hoc* rationale arguing that his decision was not entitled to much weight. However, as this matter should be remanded, it is unnecessary to decide whether the ALJ's treatment of Dr. Schonberg's opinion was adequate.

## VII.  Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner should be VACATED and the case REMANDED for further proceedings consistent with this Report and Recommendation.

s/ Greg White<br>U.S. Magistrate Judge

Date: January 29, 2009

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**